May it please the court. I'm Michael Schirrapp. I'm counsel for the appellants. With me is Mr. Callahan, my co-counsel, and my client Mr. Jim Hartman is also in the room. He's in the second row behind me. Your Honor, we're here on an issue concerning Mr. Hartman's desire to sell his business. He's a small businessman. We know the facts of the case. What's your legal argument on why under that statute in Virginia he gets to do what you say he gets to do? Okay, thank you Your Honor. What our position is, is the statute in question, Virginia 46.2 1569.1, is mostly a procedural statute with one substantive provision, which I call the touchstone, which is that the seller in a right of first refusal exercised by a manufacturer, a motor vehicle manufacturer, has the right to get what he is contracted to get or greater. And that is what he's entitled to. And that is consistent with what a right of first refusal is. The language you're talking about, that the exercise of the right of first refusal has to result in the dealer receiving the same or greater consideration as it has contracted to receive in connection with the proposed transfer? Yes, Judge. Okay. Doesn't that just raise the question of consideration for what? I mean, I assume Volvo's going to say, yeah, that's right. You absolutely get the same or greater consideration as you have contracted to receive for your Volvo assets in connection with the proposed transfer. It doesn't seem to me that the statute actually addresses sort of the precise question that is dividing you guys. Well, the point I would make on that, Your Honor, there's actually several points I'd make on that. Number one, the issue is that Volvo says that means just the Volvo assets. That's the way they read it. But had the General Assembly wanted to provide that, it could easily have done that. Volvo goes to great time in their briefs to point out that the statute was passed in 2003. They do it in terms of understanding the land and the dealership. If it had made it clear to protect the manufacturers, your point. My point is exactly right. If it had made it clear to protect the dealer, too, couldn't they have? Well, but it's pretty clear he's supposed to get what he bargained for or graded. But if they had made it clearer? In terms of the dealer, no, Your Honor. Why wouldn't they say if the dealership has two sets of inventory, it's the first manufacturer who opts. They couldn't have put that in the statute. If that was their concern, they could have done that. But I didn't say, listen, you don't answer my question. I didn't say if that was their concern. I said, couldn't the statute make your point clearer? Your Honor, the statute could always be clearer. But a statute that says a seller is to get everything he's bargained for or more is pretty clear. And where the statute does not say, and where a statute is passed after it's clear there are dual dealerships. I mean, there have been dual dealerships from the 50s. And where the statute does not go on to say everything he's bargained for or more with respect to the line make of the exercising right of first refusal holder. Your argument is the statute is clear on its face, you win, period. That's your argument? My argument, Your Honor, is that the substantive point of the get everything he bargained for or greater. The answer is clear on his face, your argument, the statute is clear on his face, that you win in this circumstance. Yes, sir, because to me that's the touchstone. Throughout this matter, the judge below was listening to the arguments by Volvo about absurd results, absurd results. But the ultimate absurd result is to provision of 1569.1 that the seller is supposed to get everything he contracted for or greater. And he could have in this circumstance. And just to go into that. Has that statute ever been applied to bundled dealerships? I'm not aware of any case in Virginia that has done that. Doesn't that make a difference? To me it doesn't make a difference, Your Honor, because in the end it still says he's entitled to get everything he's bargained for. I'm sorry, everything he's contracted for. That's the touchstone. That's the true substantive provision here. And why is that important? What's really important here is because that is what a right of first refusal is. A right of first refusal is that the holder of that right derives its rights through the buyer. And as such, it only has the rights that the buyer's rights are to become, in this case, become a dealer if he pays all the consideration he agreed to pay. That's what a right of first refusal is. And in fact, the franchise agreement here, the Volvo franchise agreement, makes clear that... What if the change of ownership, proposed change or transfer, ownership or transfer, went with 50,000 acres of land in the contract? That would cover that as well? I will... Let me go to that because... Answer yes or no and then go to it. Would that include everything in the contract? Land, everything else? It depends on how it... It depends on what the operation being sold is, Your Honor. If he had just picked up $50,000 at 50,000 acres and added it to the contract, no, it wouldn't cover that. But that's not what's happened here. The statute doesn't say that. The statute, what you keep pointing to, isn't it paragraph 2? The exercise of the right of first refusal will result in the dealers and the dealer's owners receiving the same or greater consideration as they have contracted to change of ownership or transfer. That's what you point to. That's exactly it, sir. Then in the proposed change of ownership or transfer included a sale of 25,000 acres of land, your position is the land has to be bought as well. That is not my position, sir, because that would be a separate entity. Where does that statute say about a separate entity? It doesn't say it, Your Honor, but what it means. No, Your Honor, I'm looking at the facts of this case. No, that's outside the statute. You said the statute makes it clear. I think that's what you said. You said the only substantive provision. Did I read the right... You are absolutely right. But that's not... Your answer does not seem, I could be wrong, but it does not seem to comport with your understanding of the statute. Let me step back and then let me clarify that for myself, okay, because I don't think I've been clear myself. The statute makes it clear that he's supposed to get what he's contracted to get. That's what a right of first refusal is. That's what the Franchise Agreement says. Now, when presented with that, Volvo can question that, and they have, okay? That then is their burden to show that for some reason he's done something underhanded or something that's not business. You know what you just did? You said not contemplated by the statute. Well, the statute certainly... I thought your argument was, I thought you said you win based on the language of the statute. I thought that was your point. Based on the facts of this case, yes, I do, Your Honor. But you just said what the statute contemplates. That's what you just said in your answer, and the statute clearly, more than contemplate, it talks about the right of first refusal. No question about it, Your Honor. So then, don't we look to Virginia law to see what the right of first refusal entails? Yes, sir, we do, Your Honor. And if we look at the right of first refusal, I think it's the Landa case. Hadn't the courts of Virginia said it's not anything you can add on to what is considered in the right or covered by the right of first refusal? It's just the issues of the right of first refusal. Isn't that correct? I'm glad you brought that up, Your Honor, because in the Landa case, which cites Pantry Pride, that Landa did involve the addition of a piece of land to a piece that was subject to the right of first refusal. Here, and in Pantry, they cite the Pantry Pride. In Pantry Pride, they made very clear in the language of the opinion that when they spoke about specific performance to enforce a right of first refusal, that it would depend on, there's a difference in contiguous land cases, because you have to look at what the impact is on the remaining businesses. Now, in our case, Your Honor, this is a business that was... So you think the language of Landa helps you? Yes, yes, Your Honor. More than it helps the other side? Specifically, the language of Landa helps me, and it's, I'm sorry, not Landa, Pantry Pride helps me, because I'm going now to page 639 of the decision. In contiguous land cases, a court might legitimately be wary about enforcing specific performance. Be wary about it. In such cases, it may be incorrect to assume that every acre is of equal value or that larger property would be saleable after... Is the right of first refusal in the statute... I want to make it clear, I don't think the statute clearly addresses this circumstance. I don't think it does. You haven't explained to me that it does. I'm going to ask the other side. If the language of the statute addresses it clearly, and I don't think that it does, I could stand to be corrected on that, but the statute talks about the right of first refusal for the manufacturer. What happens when you have two manufacturers that are involved? Who wins then? Then the first one to exercise... Or do they do it exactly the same time? That won't happen, Your Honor. No, no, no. Oh, you don't know that for sure. I guarantee that when people stand up and say it never happens, we'll have a suit on that in the next 10 years. If they exercise exactly... Wait, wait. Under my hypothetical, which I know you say is impossible, I don't know about that, but if both get noticed at the same time and exercise at the same time, what happens then under the statute? Then each manufacturer... Wait, what does the statute say happens? The statute doesn't address it except for one thing, which is whoever exercises has to make sure that the seller gets everything he was entitled to get. Let's just leave that alone for a second. Leave that out. What if both of them come back in offering what you want at exactly the same moment? What happens under the statute? Then as long as the seller is getting everything he contracted for, he's out of it, and it's up to the two exercisers to work it out. I didn't ask you what your client thought of it. I said under the statute, what happens? What does the statute direct happens then? But the only protection in the statute, Your Honor, there are procedural portions of it. But the only protection in the statute, Your Honor, are of the seller. Simply, the seller is to get what he wants. That's not true. That's not true. It's a right of first refusal. You want to call that a procedural right, but he has that right. I'm just pointing out the statute doesn't address all of this, and there certainly can be a situation that arises, because you haven't answered it, that arises that the statute doesn't answer. I think it doesn't answer this situation. I don't think it answers my hypothetical about the first refusal. So then if it doesn't answer it, what do we do? Look to Virginia law? Do we certify it? What do we do? I think it does answer it in this case, Your Honor. The statute does. In this case, Your Honor, because first of all, Kenworth is a party in this and has given no indication it's exercising a right of first refusal. Azusa has not even made an appearance in this case. No, no, no, no, no. You're talking about as the statute might work in these facts, that issue doesn't arise. It's not the same thing as saying the statute addresses such a circumstance when it would arise. That's a different thing. I'm talking about does the statute in and of itself answer this question? And if it doesn't, what do we do? My answer to that, Your Honor, is it provides two rights. It provides, as you point out, procedurally, a right of first refusal for a manufacturer. I said if the statute doesn't answer it, what do we then do? What do we do then? We look at the facts of this case and how it should operate in this case. No, you find the law. Don't we have to apply the law? Where do we go to find what the law is and how this statute is likely to be applied in Virginia if the statute itself doesn't specifically answer the question in front of us? But it does specifically answer the question, Your Honor, in that it says it is a right of first refusal, which carries with it the presumption that it is something that a manufacturer subsidizes the buyer to get, meaning it's got to perform the contract that the buyer has entered with the seller. And it provides the rights of the seller to get everything that it contracted to get. And the various permutations that have resulted from the list of horribles suggested by Volvo to suggest that those are absurd results, lead to the ultimate absurd result that Mr. Hartman, who from the beginning was a unified business of multiple dealerships and looked on that way, should get what he's entitled to. And my red light is on. Do we have any other questions? All right, you have some time reserved. Thank you. Your Honors, may it please the Court, Tom Warren on behalf of Volvo Group North America. Your Honor, to your question, the statute is not unambiguous, and the district court here relied on principles of statutory construction to analyze it, and did it by analyzing the Landa case and looking at Pantry Pride and this Court's other jurisprudence in this area. The notion that a right of first refusal can't be encumbered by other property is a principle not only of Virginia law, but it's a principle of basically every jurisdiction. In fact, I think one of the cases we brought to the Court's attention in our 28J listed 21 different jurisdictions in which that principle applied. You know, I think one of the fundamental principles of statutory construction is that you can't read a statute in a way that would eliminate somebody else's right to the statute. Under the Virginia statute, each manufacturer has a 45-day window of time to exercise its right of first refusal. If Mr. Schirrapp was correct, the exercise of the right of first refusal by one of those manufacturers would vitiate the other two manufacturers' right to exercise the right of first refusal within a 45-day period of time. So you can't read the statute in a way that empowers one manufacturer's right of first refusal. Do you think the language of the statute answers this question specifically? No. I mean, that's why we looked at principles of statutory construction. We would also submit that the language that Mr. Schirrapp cites about getting this same or greater consideration, obviously once one reads the statute in a way that gives each manufacturer the right to a first refusal over their particular dealership, that that language would then apply to the assets or stock, whatever it might be associated with that dealership. I would note for the court that Volvo, in this case, has not indicated one way or another whether it would exercise that right of first refusal. There's nothing in the record suggesting— Why don't you come back once you've made up your mind? Yeah, well, you know, what we—and we might see your honor again. I hope not, but at least—I'm sure you hope not. But at least the question of whether or not there is going to be some financial impact on Mr. Schirrapp's client, in this case, remains to be seen. What needs to happen in this case is there needs to be an appropriate offer that is made that appropriately values the assets of the respective dealerships, and then the manufacturer— I don't think the statute requires that expressly. The statute doesn't require that. What do you think requires that? Well, two things. Under the statute, in order for Volvo to meet the condition of offering the same or more for the dealership than is being offered by the purchaser, it needs to know what the purchaser is offering for those particular dealerships. The statute doesn't say the same or greater consideration on proposed change of dealership. It says of ownership or transfer. That's right. And there's no dispute that a transfer is occurring here. When Judge Dillon looked at this issue, that was—the way she interpreted that is the same way that she interpreted the contractual language, which was— So what do we do? What do we do? We look to what law—certify it? Look to what law in Virginia? What's the law in Virginia to tell us what do we do and what this means? How do we apply it? I don't think you need to certify it, your honor, because I think that you— What else do we do? Well, you look—you make the educated decision as you always do. Make it. Make it. Make that argument. The argument is that under Virginia law, you cannot encumber a right of first refusal. That is a principle of general applicability. When one looks at the Virginia statute, it does not expressly contemplate a dual dealer situation. However, while on the one hand, Virginia law allows dual dealerships to exist, and in fact, Volvo has permitted it— I don't think that has anything to do with your argument. I don't think it does. In your argument, I think you just stated it, if I understand it, that we look to what the right of first refusal is under Virginia law, because you're clearly granted a right of first refusal. You and maybe somebody else, but clearly your client is. You argue. And we have to see what that is. And if you look at Landa and other cases, that's—Virginia certainly suggests that that is for a part, not the whole. It can be for part, not the whole. That's correct. And you would have us look at that language in those cases and go, that means the right of first refusal to be honored in Virginia is that there has to be a debundling of some kind. That's right, Your Honor. And this Court's decision in Pantry Pride, which was a right of first refusal case, itself looked to Virginia law and did that analysis. So to the extent that there are findings of the panel in Pantry Pride that this Court— The other side said that only has to do with contiguous property. I would respectfully disagree, Your Honor. I think that—I mean, consider that— You think that's a general principle applied in the circumstance of contiguous property and with maybe some comment on what that entails? Is that what that is? Although that was an issue in that case, the basic principle is that you cannot encumber a right of first refusal by adding additional property to it. That makes the right of first refusal less than what is called for in the statute or less than what was bargained for. That's just a basic principle of a right of first refusal. A right of first refusal statute that both manufacturers want the right of first refusal. Well, then, to the extent that they— You think your solution separates it out in the debundling and there has to be some kind of accounting for the value of the different inventory and your client would have to match what's attributable and the overall offer to the Volvo and the other side could take the other stop. That would be the case? Exactly, Your Honor. In other words, you think there's a way that it could be reconciled under your reading? The right of first refusal could be reconciled under your reading, but it's difficult to see it under his reading? That's right, Your Honor. I mean, every single manufacturer under the statute, we don't even need to look at what their dealer agreements say, but Kenworth and Isuzu and Volvo, by statute, they all have a right of first refusal to their dealerships. Can I just stop you? Because I was trying to figure out the relationship between the contract and the statute here. So you're saying even if there had been no contract at all, no contractual right of first refusal, this statute grants sort of an affirmative substantive right to a right of first refusal? Yes, Your Honor. Okay, and that's notwithstanding the terms of any franchise agreement. So if they had contracted, if you all had actually contracted with your dealers to say we want a right of first refusal, but we're fine with it being bundled up. That's fine. We'll package land, package buildings, whatever you want. That's what we think of as a right of first refusal. Just say for whatever reason you had that in your contract. This statute would give you a right to kind of – this statute would supersede that. You would be free of that obligation because under this statute, you have a right to a clean right of first refusal. I think that's right. I guess my answer to that question, Your Honor, would be that the way that the Fourth Circuit has looked to the statute is that it's written for the benefit of the manufacturer. Now there might be some estoppel type argument. There might be some other type of argument where if a manufacturer has limited its rights in a certain way under a contract, that it might be precluded from later arguing that it has broader rights under a statute, that it's drafted. I don't think this really matters in this case because it seems like the contract and the statute, I mean, your main argument is they match up or we've got the same thing under both. But it just seems like a more natural reading of the beginning of the statute, that what it's saying is notwithstanding the terms of your franchise agreement, a manufacturer will be permitted to, you'll be allowed to exercise your contractual right of first refusal only if these requirements are met. It's sort of a possible restriction on a contractual right, but not that it would give a manufacturer more rights than it has under the contract. Yeah. I mean, I think with respect to certain portions of it, but by the same token, if you meet those criteria, the statute also gives power that might not otherwise exist in the franchise agreement. For example, a franchise agreement might not have a right of first refusal in it, in which case the manufacturer would have it. The manufacturer also has a 45-day window of time to exercise it, conceivably if a franchise agreement only had a 30-day window of time in it. So it is a baseline for the rights. It does in fact protect the dealers to the extent that it has the consideration type language in it, but it also protects the manufacturers in that it gives a baseline of what that right of first refusal is and as this court said in Pantry Pride, the statute was unlike some others, most franchise statutes which are drafted for the benefit of the franchisee, the rights of first refusal in fact exist for the benefit of the manufacturer. You know, I think that just as a hypothetical to look to the absurdity of the appellant's position here, imagine a situation where Volvo had one franchise and let's say Freightliner had 500 franchises and they were all owned by the same dealer. Imagine the appellant's scenario, Volvo would have a right of first refusal if it exercised it first over the 500 Freightliner dealerships and Freightliner would have no right of first refusal under the statute at all. That obviously can't be right. It isn't consistent with the law of the right of first refusal and the district court which did an excellent job of going through the statute and the contractual rights was correct in granting summary judgment as it did. If your honors don't have any further questions. Thank you. All right, thank you. May it please the court. I may have been unclear about my Pantry Pride argument. I did not argue, I did not intend to argue that it only applied in contiguous land cases. The point I tried to make about Pantry Pride is in ruling as it did because there was, without question, land that was not subject to it. That was added in as part of the contract that was at issue. My point was in considering it, the court made clear that if there were to be specific performance standard, the court has to be wary in cases of contiguous land to be careful what impact that has on the contiguous land. That was my point. And how does that apply here? That applies here because this is not an issue where franchisors were put together and then it was taken to Volvo and they said, here's what it is, you take this or leave this under right of first refusal. This is a company that was built over 30 years. This is a company that was built based on dual dealerships. The argument is that you think the court should be wary of first refusal in a narrow sense without considering the impact they could have on what was left. That's exactly right. That's exactly my point, Your Honor. Because it's clear their position is if it's just the Volvo assets that they have the rights to, that leaves Mr. Hartman hanging as to the rest of the assets. And who knows what they're worth on dealerships that have been classically operated together with certain benefits of doing it that way. What's he left with if he's only got the others where the seller has in this case said, I'll buy it all, but if some of it's taken out, I don't see the economics of it. I had some concern that hadn't been expressed, just a practical concern about, you know, one manufacturer, Volvo, being forced into the business of having other products that they don't want to have anything to do with or they don't want to be associated with. But your argument would be, well, this statute exists and you got into business or continued business under such an arrangement. So that just comes with the territory sort of. Well, it's not really a territory, Your Honor. It's continuing business, which they have already approved and consented to. That's what I mean. For 30 years. That's what I mean. It comes with the arrangement that you've already agreed to. In order to that statute, if you read it the way that I do, you would say to them, you've accepted this practice, being in the same relationship with the other manufacturer through our dealership, and you know what the statute says, and if you want it, you take the whole deal. That's exactly right, Your Honor, because it's been run that way. And, in fact, we quote in our paperwork a testimony from Mr. Winter, in which I asked him about all these ownerships and isn't it the case that they recognize Truck Enterprises, Inc. is owning all of these businesses, one operation. And he said to me, to me, Jim Hartman is Truck Enterprises, Inc. That's how we view it. They viewed it as one operation. And so, as a result, this is a caution situation. And I will say to you, Your Honor, I think we are fully within their contract because in their brief they make the point that this is a dealership transfer. We agree. They make the point they have the right of first refusal. We agree. But then they argue that the dealership is the business, the dealership means the Volvo dealership. But the contract never says that. It's not quoted, Your Honor, in their brief. In fact, what their contract says is that the dealership is the business operations of the dealer and the business operations here, Your Honor, have been the dual dealerships, which are part of an overall company run as one company, and through which the dealer sells products. Those are Volvo products, but I didn't say exclusively products, and otherwise discharges its obligation under the agreement. Now, one of the obligations under the agreement, Your Honor, is Section 3.43, which allows a dealer to sell other products as long as it's consented to by Volvo, which it was here, and says how that's done. So the dealer operations contemplates other products and a unified business. That's why we say we've got to look at land and pantry plaid in that light and be cautious about what that means because it takes us back to the touchstone, Your Honor, and the touchstone is the one substantive right of the dealer under the right of first refusal statute, which is to get everything that he contracted for or greater. You raised the contract. Can I just ask you a question sort of about how the pieces of your argument fit together? I know your view is that you have a contractual right to sort of that the right of first refusal under the contract also includes the mingled assets. But even if you are wrong on that, that's not sort of necessary to your statutory argument, right? Your view is the statute, even if the contract does not entitle you to get compensation for the whole deal but only for the Volvo assets, doesn't matter because the statute supersedes the contract? That's correct, Your Honor, because it's notwithstanding the contract. Our position is we performed under the contract and it's consistent with our rights to get everything. But Your Honor is correct. That's our position.  Thank you.
judges: Stephanie D. Thacker, Pamela A. Harris, Dennis W. Shedd